# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARIA ALANIS,** *et al.*, <br><br>　　　　　Plaintiffs, <br><br>　　v. <br><br>**PFIZER, INC.,** *et al.*, <br><br>　　　　　Defendants. | **1:14-cv-00365-LJO-MJS** <br><br> **MEMORANDUM DECISION AND ORDER REMANDING CASES TO FRESNO COUNTY SUPERIOR COURT** |
| **SYLVIA WEAVER,** <br><br>　　　　　Plaintiff, <br><br>　　v. <br><br>**PFIZER, INC.,** *et al.*, <br><br>　　　　　Defendants. | **1:17-cv-00663-LJO-MJS** <br><br> **MEMORANDUM DECISION AND ORDER REMANDING CASE TO SOLANO COUNTY SUPERIOR COURT** |

## I. INTRODUCTION

Plaintiffs in these related cases[1] ("Plaintiffs") originally filed their complaints in California state court,[2] alleging that Lipitor, a prescription drug developed and manufactured by Pfizer, Inc., and marketed and distributed by McKesson Corporation (together, "Defendants"), caused them to develop type 2 diabetes. Following removal to this court, the cases were transferred to the Lipitor MDL in the

---

[1] Plaintiffs in *Alanis, et al. v. Pfizer, Inc.*, 1:14-cv-00365-LJO-MJS, are Maria Alanis, Andrea Ruth Joiner, Elizabeth Martinez, and Carla Gilliam; Sylvia Weaver is the sole Plaintiff in *Weaver v. Pfizer, Inc.*, 1:17-cv-00663-LJO-MJS.
[2] The *Alanis* Plaintiffs filed suit in Fresno County. Ms. Weaver filed suit in Solano County.

1

District of South Carolina in 2014. In early 2017, the cases were remanded to this Court for determination whether the Court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332.

After they were remanded from the MDL, the great majority of Lipitor cases brought by California plaintiffs were before the Honorable Cormac J. Carney in the Central District of California. Following Judge Carney's recent ruling remanding substantially similar matters to state court, the Court ordered Defendants to show cause "why this Court should not adopt the conclusions and reasoning set forth in Judge Carney's order." ECF No. 38.[3] Having carefully considered Judge Carney's order and the parties' Responses to the Court's Order to Show Cause, ECF Nos. 39-41, the Court finds that it does not have jurisdiction over these cases under CAFA and remands them to California state court.

## II. **BACKGROUND**[4]

Beginning in 2013, plaintiffs throughout California filed suit in state court alleging that Lipitor caused them to develop type 2 diabetes. On August 13, 2013, three such plaintiffs filed a petition with the California Judicial Council to have their individual cases coordinated in a Joint Council Coordinated Proceeding ("JCCP") pursuant to California Code of Civil Procedure Section 404. After additional plaintiffs filed similar state court actions, a group of twenty-one plaintiffs from eight state court cases, including the four Plaintiffs in the *Alanis* action, filed an amended coordination petition on September 25, 2013. The amended petition stated that it was "based upon the criteria codified in California Code of Civil Procedure § 404.1. That is, in the LIPITOR® cases sought to be coordinated herein:

> *One judge hearing all of the actions for all purposes* in a selected site or sites will promote the ends of justice taking into account whether common questions of fact or law are predominating and significant to the litigation; the convenience of parties, witnesses, and counsel; the relative development of the actions and the work product of counsel; the efficient utilization of judicial facilities and manpower; the calendar of the courts;

---

[3] Citations are to the docket in the *Alanis* matter, 1:14-cv-00365-LJO-MJS.

[4] This section draws substantially from Judge Carney's Order remanding the cases before him to state court, which relied on a nearly identical record. ECF No. 37-1 ("Carney Remand Order").

> *the disadvantages of duplicative and inconsistent rulings, orders, or judgments*; and, the likelihood of settlement of the actions without further litigation should coordination be denied."

ECF No. 41-4 (Am. Pet.) at 6-7 (quoting almost verbatim the requirements of Cal. Civ. Proc. Code § 404.1) (emphasis added). The amended petition specified that coordination would "promote the ends of justice because there are common issues of fact and law, namely the adequacy of the . . . LIPITOR® warning labels, and coordination will avoid duplicative and inconsistent rulings, orders, and judgments." *Id*. at 8. It also stated that counsel for those twenty-one plaintiffs named in the amended petition "is informed and believes that additional LIPITOR® injury cases will be filed within the next weeks. Petitioners will seek to join these additional cases via Add-On Petitions." *Id*. at 7.

The memorandum of points and authorities supporting the amended petition further explained that the cases will "involve duplicative requests for the same defendant witness depositions and the same documents related to the development, manufacturing, testing, marketing and sale of LIPITOR®. Absent coordination of these actions by a single judge, there is a significant likelihood of duplicative discovery, waste of judicial resources and possible inconsistent judicial rulings on legal issues." ECF No. 41-4 at 3; *see also id*. at 7 ("[T]here will be duplicative discovery obligations upon the common defendants unless coordination is ordered. Coordination before initiation of discovery in any of these cases will eliminate waste of resources and will facilitate economy.").) Petitioners reiterated the concern of preserving judicial resources and avoiding "duplicative and inconsistent rulings, orders, or judgments." *Id*. at 7-8. It further represented that "issues likely to be raised in this action include issues pertaining to liability, allocation of fault and contribution, as well as the same wrongful conduct of defendants. Such difficult issues may ultimately be addressed by the California Court of Appeal. Coordination is required in order to avoid duplicative efforts and inconsistent rulings." *Id*. at 8. The amended petition was also accompanied by an attorney declaration which stated that "[w]ithout coordination, two or more separate courts will decide essentially the same issues and may render different rulings on liability and other issues." ECF No. 41-4 ¶ 11.

On December 6, 2013, the Judicial Council granted the request for coordination and created a JCCP with the special title of "Lipitor Cases," but only included the three cases from the original petition in the JCCP. ECF No. 41-5. The JCCP was assigned to Judge Kenneth R. Freeman of Los Angeles Superior Court. ECF No. 41-6. On January 13, 2014, Judge Freeman entered an order granting an add-on petition whereby four plaintiffs in another state court action sought to be added to the JCCP, bringing the total number of plaintiffs in the JCCP to seven. ECF No. 41-7.

Following reassignment of the JCCP to Judge Jane Johnson, Judge Johnson entered orders granting add-on petitions filed by two plaintiffs who had been named in the amended coordination petition but not included in the initial order creating the JCCP, bringing the total number of plaintiffs in the JCCP to nine. ECF Nos. 41-10, 41-11. Fifty-three more plaintiffs sought to be added to the JCCP through add-on petitions, including fifteen more plaintiffs who had been named in the amended coordination petition but not included in the initial order creating the JCCP. ECF Nos. 41-12, 41-13, 41-14. These petitions are still pending. Thus, to date only sixty-five plaintiffs have sought to be coordinated in the JCCP—nine were actually coordinated, fifty-three still have pending petitions,[5] and three more were named in the amended coordination petition but have not filed add-on petitions to be coordinated after they were left out of the initial order creating the JCCP.

On February 24, 2014, the parties had their first and only status conference in state court before Pfizer started removing the cases to federal court. ECF No. 39-11. At the conference, counsel for the JCCP plaintiffs (hereinafter "JCCP Counsel") provided Judge Johnson with a chart demonstrating that at that point in time, there were at least fifty-four cases concerning similar effects of Lipitor filed in California, which encompassed 1,855 plaintiffs. *Id*. at 5:20-6:4; 6:16-17. JCCP Counsel explained that they have "had total transparency with respect to communications of lawyers both in California and nationally who had any interest in or doing anything [sic] litigation involving Lipitor," *id*. at 7:2-5, and

---

[5] The *Alanis* Plaintiffs are among those who petitioned to be added to the JCCP but whose petitions remain pending. ECF No. 41-12.

presented Judge Johnson with a proposed "leadership structure" comprising of an executive committee and a steering committee to handle the rapidly-expanding litigation, *id*. at 7:15-18. JCCP Counsel had also "given every lawyer who's interested at all in participating in the organizational structure and leadership, the opportunity to contact [them] and . . . enter their willingness or interest in being part of the leadership structure," and had not turned down a single lawyer who expressed such interest. *Id*. at 11:7-17. They further represented that they "know lawyers that are filing the cases," "know who is interested in participating in leadership and who's not," and hoped "to get the cases that have been filed obviously added on [to the JCCP] as soon as possible." *Id*. at 11:19-21, 15:22-23. Counsel for both parties then sought clarification regarding the details of coordination, and the following exchange took place:

> MR. KIESEL: And that's for discovery purposes; that they are coordinated together for discovery.
>
> THE COURT: Right.
>
> MR. CHEFFO: Well, would they be sent back?
>
> THE COURT: They can be sent back. They can be sent back for trial. Yes, they can be sent back.
>
> MR. CHEFFO: So the coordination order is with respect to discovery?
>
> THE COURT: Everything is sort of bundled here for case management and discovery. And they can be tried here, but they can be sent back for trial.

*Id*. at 17:13-23.

On March 4, 2014, Judge Johnson signed a proposed order to streamline the procedures for adding new cases to the JCCP through additional add-on petitions. ECF No. 39-12. The order regarding add-on procedures stated that "[a]ll cases filed in California state court against Pfizer, Inc. or McKesson Corporation, alleging injuries related to the development of Type II diabetes, and seeking damages, injunctive relief, or restitution arising from the investigation of Lipitor®, are assigned to the Honorable Jane L. Johnson," and the "parties to such actions, however, are still required to comply with the

stipulation or notice add-on procedures set forth in this Order." *Id*. at 1. The order further explained that after the parties filed either stipulated or noticed add-on petitions, any party named in such a petition would have ten days from the date of service to file a notice of opposition to the coordination. *Id*. at 3. If no notice of opposition was filed, the cases identified in such add-on petitions would be automatically added to the JCCP. *Id*. at 3-4.

Beginning on March 12, 2014, Pfizer began removing the state court actions, including cases that had not been named in the amended coordination petition or add-on petitions, to federal court on the grounds of diversity jurisdiction (fraudulent joinder) and mass action jurisdiction pursuant to CAFA. ECF No. 39, Pfizer, Inc.'s Response to Order to Show Cause ("Pfizer Resp.") at 6; ECF No. 41, Plaintiffs' Response to Pfizer's Response to Order to Show Cause ("Plaintiffs Resp.") at 5-6. Pfizer also requested a stay in federal district court pending transfer of the cases to Multi-District Litigation ("MDL") court in South Carolina. Plaintiffs Resp. at 6. "While some removed plaintiffs acquiesced in the transfer of their cases to the MDL and chose at that time not to seek remand to California state court, many removed plaintiffs immediately advised the MDL court that they would be seeking remand to California and asked the MDL court to stay their actions pending determination of the threshold question of federal subject matter jurisdiction." Plaintiffs Resp. at 6. The MDL court did so, ECF No. 41-16, and then in June 2014 determined that diversity jurisdiction did not exist, *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*, No. 2:14- CV-01810, 2016 WL 7335738, at *6 (D.S.C. Nov. 7, 2016). Because the only remaining basis for federal subject matter jurisdiction was CAFA's mass action provision, and because a majority of plaintiffs did not consent to transfer to MDL, the MDL court recommended that the Judicial Panel on Multidistrict Litigation remand the cases. *Id*. at *7-*8. The cases were then transferred back to this Court. By the last count, Plaintiffs have filed more than 140 California state court actions involving 4,800 plaintiffs, which have been removed to federal courts in all four districts of California. Pfizer Resp. at 6.

### III. DISCUSSION

6

CAFA relaxed the requirements for diversity jurisdiction in "class actions" and "mass actions," permitting civil defendants to remove these types of suits to federal court under certain enumerated circumstances. CAFA defines "mass actions" as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i). It further requires that mass actions removable to federal court meet the rest of CAFA's jurisdictional requirements, including an aggregate amount in controversy greater than $5 million, minimal diversity, and that each plaintiff meets the $75,000 jurisdictional amount in controversy requirement for federal diversity jurisdiction. *Id.* §§ 1332(d)(2), 1332(d)(11)(B)(i). Civil actions "joined upon motion of a defendant" or "claims [that] have been consolidated or coordinated solely for pretrial proceedings" are not removable "mass actions" under CAFA. *Id.* § 1332(d)(11)(B)(ii). "Although CAFA thus extends federal diversity jurisdiction to both class actions and certain mass actions, the latter provision is fairly narrow. As noted above, CAFA's 'mass action' provision applies only to civil actions in which the 'monetary relief claims of 100 or more persons are proposed to be tried jointly.'" *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 953 (9th Cir. 2010).

**A.**     <u>**Plaintiffs Did Propose A Joint Trial In The Coordination Petition**</u>

Among other things, CAFA's jurisdiction over mass actions is only triggered in the presence of a "propos[al] to be tried jointly." A proposal to try claims jointly need not come in the form a "formal motion for a joint trial." *Briggs v. Merck Sharp & Dohme*, 796 F.3d 1038, 1048 (9th Cir. 2015). Proposals for joint trials may be implicit, and where plaintiffs have submitted petitions for coordination, courts are commanded to "carefully assess the language of the petitions for coordination to see whether, in language or substance, they proposed a joint trial." *Corber v. Xanodyne Pharm., Inc*., 771 F.3d 1218, 1223 (9th Cir. 2014) (en banc). In *Corber*, the plaintiffs' petition sought coordination "for all purposes," a broad category that, the Ninth Circuit held, "must include trial." *Id*. at 1223. The petitions and memoranda in support of them recited the standards for coordination under California Code of Civil

7

Procedure Section 404.1 but also asserted that "issues pertaining to liability, allocation of fault and contribution, as well as the same wrongful conduct of defendants" weighed in favor of coordination. *Id*. at 1224. Because the plaintiffs cited factors beyond those listed in Section 404.1, including "the danger of inconsistent judgments and conflicting determinations of liability," potential issues that "would be addressed only through some form of joint trial," the petitions constituted a proposal for a joint trial. *Id*. at 1224-25.

The amended petition and supporting documents at issue here are substantially similar to the petition and supporting memoranda in *Corber*. Like the coordination petition in *Corber*, the coordination petition here sought coordination "*for all purposes*" and cited the potential for "duplicative and inconsistent rulings, orders, or judgments" and potentially diverging determinations of liability as reasons to hold coordinated proceedings. Am. Pet. at 7-8; *compare Corber*, 771 F.3d at 1224-25. Not every request for coordinated proceedings under section 404 is a proposal for a joint trial that triggers CAFA jurisdiction. *Corber*, 731 F.3d at 1224; *Briggs*, 796 F.3d at 1050-51 (holding that a request to join a JCCP for pretrial purposes while preserving the right to an individual trial was not a proposal for a joint trial for CAFA purposes). But because Plaintiffs sought coordination for "all purposes" and sought coordination to reduce risks, such as liability, that would likely be resolved through some type of joint trial, the petition constitutes a proposal for a joint trial. *Id*. at 1224-25.

**B.     Fewer Than 100 Plaintiffs Proposed A Joint Trial**

The core issue is whether there was a proposal that 100 or more plaintiffs' cases be tried jointly. "Congress intended to limit the numerosity component of mass actions quite severely by including only actions in which the trial itself would address the claims of at least one hundred plaintiffs." *Tanoh*, 561 F.3d at 954. Given this strict jurisdictional threshold, Plaintiffs, as "masters of their complaints," are free to "structure actions in cases involving more than 100 potential claimants so as to avoid federal jurisdiction under CAFA." *Corber v. Xanodyne Pharm., Inc.*, 771 F.3d 1218, 1223 (9th Cir. 2014) (en banc); *see also Dunson v. Cordis Corp.*, 854 F.3d 551, 554 (9th Cir. 2017). Separate actions that

8

together comprise more than 100 plaintiffs may be removed to federal court under CAFA's "mass action" provision only where 100 or more plaintiffs "take the affirmative step of proposing to try their claims jointly." *Dunson*, 854 F.3d at 554. A "proposal for purposes of CAFA's mass action jurisdiction, even an implicit proposal, is a 'voluntary and affirmative act,' . . . and an 'intentional act.'" *Briggs*, 796 F.3d 1038, 1048 (9th Cir. 2015) (quoting *Corber*, 771 F.3d at 1224 and *Parson v. Johnson & Johnson,* 749 F.3d 879, 888 (10th Cir. 2014)). "It is 'not a mere suggestion'" or "a mere prediction." *Id*. (quoting *Scimone v. Carnival Corp.,* 720 F.3d 876, 883 (11th Cir.2013)). In *Briggs*, a lawyer for plaintiffs whose cases had been removed to federal court represented to the court during the argument on the motion to remand the cases that they would likely join with a JCCP that had already been formed if they were to return to state court. 796 F.3d at 1044. The Ninth Circuit held that even construing these statements as "expressing an intent to seek to join the [JCCP]," these had no legal force and were not proposals, "given that the district court lacked any authority to join the plaintiffs' cases to the [JCCP]." *Id*. at 1049. Nor did the act of filing the cases in state court "with the knowledge that there was a strong likelihood" that the cases would be joined in the JCCP amount to a proposal, because "some entity— either one of the parties or the state court—would have to take some action to effectuate the joinder." *Id*.

Defendants make two principal arguments in support of their view that more than 100 plaintiffs sought to try their claims jointly. First, they argue that each of the plaintiffs took some affirmative, voluntary action to connect themselves to the JCCP, which used the language that the Ninth Circuit has identified as requesting a joint trial, thereby bringing each of those cases under CAFA's mass action umbrella. Second, they argue that because the coordination petition sought to cover all Lipitor cases in California, all Lipitor plaintiffs who filed suit in California state courts were bound by the proposal for a joint trial.

1.      **<u>Fewer Than 100 Plaintiffs Have Sought To Be Added To The JCCP</u>**

Defendants argue that "[w]hile fewer than 100 plaintiffs formally petitioned for coordination,"

9

Pfizer Resp. at 8, more than 100 plaintiffs in one form or another signaled an intention to join the coordinated proceeding, either through the actions of JCCP Counsel or through administrative actions taken in conjunction with the filing of their complaints. JCCP Counsel's amended petition sought to include "'all subsequent LIPITOR® actions,' and stated that additional actions would be filed" (citing Am Pet. at 7); JCCP Counsel handed the Lipitor JCCP judge a table of 1,000 cases that they stated they intended to add to the JCCP and "represented that more than 1,800 claims that would be 'encompassed by the JCCP' had been filed"; JCCP Counsel proposed a leadership structure of ten firms that collectively represented approximately 2,800 plaintiffs who had filed Lipitor claims; and JCCP Counsel submitted "a proposed order to streamline the JCCP process." Pfizer Resp. at 10.

These actions are insufficient to trigger CAFA's mass action jurisdiction. The Court agrees with Judge Carney's conclusion that these actions are "merely suggestions or predictions—not voluntary and affirmative acts proposing a joint trial on behalf of the remaining plaintiffs." Carney Remand Order at 12. The "legal effect," *Corber*, 771 F.3d at 1222, of these statements was to alert Judge Johnson to the existence of additional cases that may potentially be coordinated. Plaintiffs may have signaled an intention or desire to add cases to the JCCP, but in the absence of add-on petitions or some other concrete step to effect joinder, these statements and actions remain possibilities or predictions, not "voluntary and affirmative" proposals for a joint trial.

Defendants also assert that thousands of plaintiffs "affirmatively and voluntarily indicated their intent to join the coordination proceedings on their complaints," including by indicating on the complaints' cover sheets that the cases were "complex" because they are "subject to 'coordination with related actions'" or by attaching to their complaints the Order Limiting Complex Case fees that waived payment of the complex case fee because of the existence of the coordinated proceeding. Pfizer Resp. at 10, 12. Judge Carney held that "these actions are all administrative in nature and merely alert the clerk's office to the *possibility* of coordination in order to assist with case sorting and management" but do not rise to the level of a voluntary and affirmative action signaling an intent to be "part of and bound by a

proposal for a joint trial." Carney Remand Order at 14 (citing *Briggs*, 796 F.3d. at 1049 (The plaintiffs had not made a proposal for a joint trial by simply "filing their cases in the California state court system, when a consolidated proceeding covering similar claims . . . was underway in California court.")).

The Defendants advocate a departure from Judge Carney's reasoning on this point, arguing that whether an intention to join the JCCP is directed to the JCCP judge or to the court where the complaints are initially filed by signaling that they may be coordinated with the JCCP, the plaintiffs have made a proposal to try their cases jointly. Pfizer Resp. at 13-14 (citing *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008) ("It does not matter whether a trial covering 100 or more plaintiffs actually ensues; the statutory question is whether one has been proposed.")). The Court disagrees. Checking a box or seeking a fee waiver does not alone act to propose that a plaintiff be added to the proposed trial group. Judge Johnson's order concerning add-on procedures states that while all cases are assigned to her for purposes of coordination, "[t]he parties to such actions, however, *are still required to comply with the stipulation or notice add-on procedures* set forth in this Order." ECF No. 39-12 (emphasis added). The JCCP add-on order states clearly that "the additional cases will not be part of the JCCP or subject to the terms of the coordination petition unless and until they are added by an add-on petition and not subject to a notice of opposition." Carney Remand Order at 15.

Defendants also raise concerns about the administrative difficulty involved in ascertaining when 100 plaintiffs have joined a coordinated case for trial, arguing that if Pfizer had not removed the cases at a time when over 100 plaintiffs had filed complaints, counsel for plaintiffs had announced at a JCCP hearing that they intended to join 1,000 additional plaintiffs to the proceeding, and the plaintiffs had submitted an "add-on protocol" to cover all cases, Pfizer risked facing an argument from plaintiffs that it had missed the 30-day window in which to remove. Pfizer Resp. at 14 (citing *Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 285 (6th Cir. 2016) (The 30-day removal window begins "when the defendant receives a document *from the plaintiff* from which the defendant can unambiguously ascertain CAFA jurisdiction.") (emphasis in original). In support of their argument, Defendants cite *Portnoff v. Janssen*

11

*Pharms., Inc.*, 2017 WL 708745 (E.D. Pa. Feb. 22, 2017). In *Janssen*, however, the plaintiffs made an *unsuccessful* waiver argument, and the court held that because the plaintiffs' coordination petition seeking a "joint trial" was made on behalf of fewer than 100 plaintiffs, the defendant was not at that time on notice that the case was removable. Only when plaintiffs later filed a petition covering "all plaintiffs"—and the twenty-day deadline for newly covered plaintiffs to object to inclusion had lapsed— did the number of claims included in the joint trial group cover more than 100 plaintiffs and put the defendant on notice that the removal window had begun. *Id*. at *7-*8. The Court here employs the same rule. Not until the number of plaintiffs who have sought to be added to the JCCP's joint trial group through add-on petitions or other affirmative, voluntary actions exceeds 100 will the JCCP reach the jurisdictional threshold and open the 30-day removal window.

**2.   The JCCP Does Not Create Removal Jurisdiction Over Plaintiffs Who Did Not Seek To Join It**

Finally, Defendants argue that even if fewer than 100 plaintiffs had themselves proposed to join the JCCP, the JCCP nevertheless covers all Lipitor plaintiffs who filed claims in California state court. Pfizer Resp. at 14-16. Because CAFA's definition of mass actions is written in the passive voice ("any civil action . . . in which monetary relief claims of 100 or more persons *are proposed to be tried jointly*"), they argue, Congress elected to place under removal jurisdiction both those plaintiffs who themselves propose a joint trial and "the broader category of those whose claims 'are proposed to be tried jointly.'" *Id*. at 14 (citing 28 U.S.C. § 1332(d)(11)(B)(ii)(II)).

Defendants cite no cases adopting this reading of CAFA. They read *Corber* to have covered remand orders not only as to the cases identified in the coordination petitions but also to "***all other related cases*** filed in California." Pfizer Resp. at 10-11 (emphasis in original). This stretches *Corber* too far; the opinion did not address the numerosity requirement but only decided the narrow question of whether the plaintiffs' coordination petitions constituted proposals to try the cases jointly. *See, e.g.,* 771 F.3d at 1222 ("only the 'proposed to be tried jointly' requirement is at issue here").

12

The Supreme Court construed the "mass action" provision of CAFA in *Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736, 742 (2014). The plaintiff there was the state of Mississippi, which brought on behalf of itself and its citizens a suit against manufacturers of liquid crystal displays, which had allegedly conspired to restrict competition and raise priced in the LCD market. *Id*. at 740. Defendants removed to federal court on the theory that even though there was only a single named plaintiff, the real parties in interest far exceeded the jurisdictional threshold. *Id*. The Court disagreed, holding that where Congress intended for a named plaintiff to be able to bind unnamed other real parties in interest, it knew how to do so, as it did in CAFA's definition of class actions, and Congress elected not to do so in the definition of mass actions. *Id*. at 742 ("Congress chose not to use the phrase 'named or unnamed' in CAFA's mass action provision, a decision we understand to be intentional."). Moreover, "the '100 or more persons' referred to in the statute are not unspecified individuals who have no actual participation in the suit, but instead the very 'plaintiffs' referred to later in the sentence—*the parties who are proposing to join their claims in a single trial*." *Id*. (emphasis added).[6]

Permitting a single plaintiff to propose that his claims be "'tried jointly' with 99 others without any requirement that each plaintiff join in that proposal," Pfizer Resp. at 16, would transform CAFA's mass-action provision from a "fairly narrow" jurisdictional grant, *Tanoh,* 561 F.3d at 954, into the sweeping equivalent of a class action but without any of Rule 23's protections allowing unwilling plaintiffs to opt out. *See* Fed. R. Civ. P. 23. Plaintiffs are masters of their complaints, free to "choose their forum by selecting state over federal court," *Tanoh*, 591 F.3d at 953, and the interpretation that Defendants propose is unsupported by the statutory text and "would be unfair to those plaintiffs who

---

[6] As Judge Carney pointed out, this reading aligns with the legislative history, Carney Remand Order at 12 n.4, which provides that "subsection 1332(d)(11) expands federal jurisdiction over mass actions-suits that are brought on behalf of numerous named plaintiffs who claim that their suits present common questions of law or fact that should be tried together even though they do not seek class certification status. . . . Under subsection 1332(d)(11), any civil action in which 100 or more *named parties* seek to try their claims for monetary relief together will be treated as a class action for jurisdictional purposes." S. Rep. 109-14, at 46, 2005 U.S.C.C.A.N. 3, at 43-44 (emphasis added). *See also Gutowski v. McKesson Corp.,* No. C 12-6056 CW, 2013 WL 675540, at *4 (N.D. Cal. Feb. 25, 2013) (citing CAFA coauthor Representative Bob Goodlatte's comments on the final bill that "[N]ot a single Vioxx case has been brought against Merck in State court by more than 100 plaintiffs, one of the requirements for removal to Federal Court under the class action legislation. Thus, there is no reason to believe that the mass action provision would affect any Vioxx-related cases whatsoever.").

want nothing to do with a joint trial, and unfair to the state of California, which has a significant interest in addressing injuries allegedly suffered by its citizens and setting the appropriate level of liability for companies conducting business within its borders," ECF No. 37-2, Carney Order Denying Stay, at 5.

**C.     The Court Declines To Stay These Proceedings Pending Appeal**

"A stay is not a matter of right." *Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012). "It is instead an exercise of judicial discretion that is dependent upon the circumstances of the particular case." *Id*. (internal modifications and quotations in original omitted). A party requesting a stay bears the burden of showing that the circumstances warrant such an exercise of discretion. *Id*. In evaluating such a request, courts are guided by four factors: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Id*. (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). The first two factors are the most critical, but all four factors are balanced under a "sliding scale" approach, so that a stronger showing of one factor may offset a weaker showing of another. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *Leiva-Perez v. Holder*, 640 F.3d 962, 964-66 (9th Cir. 2011).

A party seeking a stay must need not show that "it is more likely than not" to win on the merits, but the party must demonstrate, at a minimum, a "substantial case for relief on the merits." *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012). As outlined above, Defendants have failed to do so here. Only the sixty-five plaintiffs who filed a coordination petition or add-on petition have voluntarily and affirmatively proposed a joint trial.

Nor have the Defendants demonstrated "that there is a *probability* of irreparable injury if the stay is not granted." *Lair*, 697 F.3d at 1214 (emphasis in original). The Defendants argue that declining to stay these cases pending appeal would require them "to litigate in state court while jurisdictional issues remain pending in federal court" and to expend additional resourced by initiating an additional appeal.

14

Pfizer Resp. at 18. But "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough" to demonstrate a probability of irreparable injury. *Sampson v. Murray*, 415 U.S. 61, 90 (1974). Defendants fail to demonstrate a probability of irreparable harm.

The final two factors also weigh against entering a stay. The *Alanis* Plaintiffs filed suit in 2013 and the *Weaver* Plaintiff filed suit in March 2014. Both cases have been removed to federal court, transferred to an MDL in South Carolina, and transferred back to this Court. The Court declines to subject them to further delay before returning the cases to state court, both in order to avoid further harm to the Plaintiffs and to advance the public interest in the speedy and just resolution of cases.

## IV. <u>CONCLUSION AND ORDER</u>

The Court agrees with the Central District's order remanding Lipitor cases to state court. Because fewer than 100 plaintiffs have proposed to try their cases jointly, this Court lacks jurisdiction to hear these cases under CAFA's mass action provision. Accordingly, the cases are REMANDED to California state court.

IT IS SO ORDERED.

Dated: **August 14, 2017**      /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE